IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 05-76 – KAJ |
| v. | ) | |
| | ) | |
| DIAMOND STATE SALVAGE COMPANY, INC., | ) | |
| ESTATE OF HERBERT SHERR, | ) | Judge Jordan |
| NANCY SHERR, AS EXECUTRIX FOR THE | ) | |
| ESTATE OF HERBERT SHERR, | ) | |
| BARBARA SHERR KLEGER, | ) | |
| | ) | |
| and | ) | CONSENT DECREE |
| | ) | |
| DELMARVA POWER & LIGHT COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**CONSENT DECREE**

## TABLE OF CONTENTS

I.      BACKGROUND ...................................................... 1

II.     JURISDICTION ..................................................... 3

III.    PARTIES BOUND ................................................... 3

IV.     DEFINITIONS ...................................................... 3

V.      STATEMENT OF PURPOSE ........................................ 6

VI.     JUDGMENT AND SETTLEMENT .................................... 6

VII.    PAYMENT PROCEDURES ......................................... 7

VIII.   TRANSFER OF DIAMOND STATE SALVAGE SITE PROPERTY .............. 8

IX.     PAYMENT OF PROCEEDS FROM TRANSFER OF PROPERTY .............. 11

X.      RECOVERY AND PAYMENT OF INSURANCE PROCEEDS .................. 14

XI.     FAILURE TO COMPLY WITH CONSENT DECREE ........................ 16

XII.    RELEASE OF NOTICE OF FEDERAL LIEN ............................. 18

XIII.   COVENANT NOT TO SUE BY PLAINTIFF ............................. 18

XIV.    RESERVATION OF RIGHTS BY UNITED STATES ........................ 19

XV.     COVENANT NOT TO SUE BY DIAMOND STATE SALVAGE ................ 20

XVI.    EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION ................ 21

XVII.   ACCESS AND INSTITUTIONAL CONTROLS ........................... 23

XVIII.  ACCESS TO INFORMATION ........................................ 24

XIX.    RETENTION OF RECORDS ......................................... 26

XX.     NOTICES AND SUBMISSIONS ...................................... 27

XXI.    MODIFICATION OF CONSENT DECREE. .............................. 28

XXII. RETENTION OF JURISDICTION ........................................... 28

XXIII. INTEGRATION/APPENDICES ............................................ 28

XXIV. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT ................... 29

XXV. SIGNATORIES/SERVICE .................................................. 29

XXVI. FINAL JUDGMENT ...................................................... 30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIAMOND STATE SALVAGE COMPANY, INC.,<br>ESTATE OF HERBERT SHERR,<br>NANCY SHERR, AS EXECUTRIX FOR THE<br>   ESTATE OF HERBERT SHERR,<br>BARBARA SHERR KLEGER,<br><br>and<br><br>DELMARVA POWER & LIGHT COMPANY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 05-76<br>)<br>)<br>)<br>)<br>)   Judge Jordan<br>)<br>)<br>)<br>)<br>)   CONSENT DECREE<br>)<br>)<br>) |

## **CONSENT DECREE**

### **I. BACKGROUND**

WHEREAS, the United States of America ("United States"), on behalf of the

Administrator of the United States Environmental Protection Agency ("EPA"), filed a Complaint

in this matter pursuant to Section 107(a) of the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, 42 U.S.C. § 9607(a), as amended ("CERCLA"),

seeking reimbursement of Response Costs incurred or to be incurred for response actions taken

or to be taken at or in connection with the release or threatened release of hazardous substances

at the Diamond State Salvage Superfund Site, in Wilmington, New Castle County, Delaware

("the Site");

WHEREAS, the United States has incurred over $18 million in Response Costs in

connection with the Site;

WHEREAS, the Complaint filed by the United States alleges that Diamond State Salvage

Company, Inc. ("Diamond State Salvage") is liable to the United States for reimbursement of

Response Costs pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), as a person who

owns the Site;

WHEREAS, Diamond State Salvage does not admit liability to Plaintiff arising out of the

transactions or occurrences alleged in the Complaint;

WHEREAS, the United States has reviewed the Financial Information submitted by

Diamond State Salvage to determine the extent to which it is financially able to pay Response

Costs incurred in connection with the Site. Based upon this Financial Information, the United

States has determined that Diamond State Salvage has financial resources sufficient only to fund

those activities required by Sections VI through IX of this Consent Decree;

WHEREAS, Diamond State Salvage has provided notice of the United States' Complaint

in this action to certain insurance carriers identified as having issued general liability insurance

policies to Diamond State Salvage during the time Diamond State Salvage operated at the Site;

WHEREAS, the United States and Diamond State Salvage agree, and this Court by

entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in

good faith, that settlement of this matter will avoid prolonged and complicated litigation between

the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

2

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED,

ADJUDGED, AND DECREED:

## II.  JURISDICTION

1.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607(a) and 9613(b) and also has personal

jurisdiction over Diamond State Salvage.   Diamond State Salvage consents to and shall not

challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this

Consent Decree.

## III.  PARTIES BOUND

2.     This Consent Decree is binding upon the United States, and upon Diamond State

Salvage and its successors and assigns.  Any change in ownership or corporate or other legal

status, including, but not limited to, any transfer of assets or real or personal property, shall in no

way alter the status or responsibilities of Diamond State Salvage under this Consent Decree.

## IV.  DEFINITIONS

3.     Unless otherwise expressly provided herein, terms used in this Consent Decree

which are defined in CERCLA or in regulations promulgated under CERCLA shall have the

meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are

used in this Consent Decree or in any appendix attached hereto, the following definitions shall

apply:

a.     "CERCLA" means the Comprehensive Environmental Response,

Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq.*

3

b.    "Consent Decree" means this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c.    "Day" means a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d.    "DOJ" means the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

e.    "EPA" means the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

f.    "EPA Hazardous Substance Superfund" means the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

g.    "Fair Market Value" means the price which the Site Property actually brings or would bring at a fair sale between a willing buyer and a willing seller under actual market conditions, dealing at arms length, neither being under any compulsion to buy or to sell, and both having reasonable knowledge of relevant facts. In arriving at such value, the elements to be considered are recent sales of realty of comparable location and description, uses to which the realty is adapted and might reasonably be applied, demand for realty, and income produced by it, and all elements which a willing buyer and a willing seller would consider in arriving at a purchase price.

h.    "Financial Information" means the information identified in the Declaration attached hereto in Appendix A.

4

      i.      "Interest" means interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

      j.      "Paragraph" means a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

      k.      "Parties" means the United States and Diamond State Salvage.

      l.      "Plaintiff" means the United States.

      m.      "Response Costs" means costs incurred and to be incurred pursuant to CERCLA by the United States  in connection with the Diamond State Superfund Site.

      n.      "RCRA" means the Solid Waste Disposal Act, 42 U.S.C. §§ 6901 *et seq.* (also known as the Resource Conservation and Recovery Act).

      o.      "Section" means a portion of this Consent Decree identified by a Roman numeral.

      p.      "Site" means the Diamond State Salvage Superfund Site, located in Wilmington, New Castle County, Delaware.

      q.      "Site Property" means those parcels identified by numbers 2603610401, 2603610414, and 2603610415 in the Office of the Recorder of Deeds, New Castle County, Delaware,  and which are owned by Diamond State Salvage.

r.     "Transfer" means any sale, assignment, or transfer by Diamond State Salvage of the Site Property, or any portion thereof, where title to the Site Property (or any portion or interest thereof) is transferred and Fair Market Value is received in consideration.

s.     "United States" means the United States of America, including its departments, agencies and instrumentalities.

## V. **STATEMENT OF PURPOSE**

4.     By entering into this Consent Decree, the mutual objective of the Parties is to facilitate a Transfer of the Site Property and the payment of the proceeds of the Transfer of the Site property to the United States in reimbursement of Response Costs, to recover on any Insurance Policies in order to obtain reimbursement of Response Costs, and for Diamond State Salvage to resolve its alleged liability for over $18 million in costs incurred for the removal action and to be incurred in connection with the Site, as provided in the Covenant Not to Sue by Plaintiff in Section XIII, and subject to the Reservations of Rights by United States in Section XIV.

## VI. **JUDGMENT AND SETTLEMENT**

5.     Judgment shall be entered against Diamond State Salvage in the amount of $18,095,861 in favor of the United States.

6.     In recognition of the apparent financial status of Diamond State Salvage, the United States agrees not to attempt to recover any portion of the $18,095,861 judgment from Diamond State Salvage, provided: (A) the Financial Information provided to the United States by Diamond State Salvage on November 2, 2005 was to the best of Diamond State Salvage's knowledge accurate at the time such information was provided to the United States; and (B)

Diamond State Salvage pays to the United States: (1) all Net Proceeds from the Transfer of the Site Property in accordance with the requirements of Section VIII of this Consent Decree, and (2) a percentage of the proceeds recovered from any Insurance Policies pursuant to Section X of this Consent Decree; and (C) that Diamond State Salvage is in compliance with the terms and requirements of this Consent Decree.

## VII. **PAYMENT PROCEDURES**

7.     All payments made pursuant to the requirements of this Consent Decree shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number1997V00255, the EPA Region and Site/Spill ID Number 03-KD, and DOJ Case Number 90-11-2-1275.   Payments shall be made in accordance with instructions provided to Diamond State Salvage by the Financial Litigation Unit of the U.S. Attorney's Office in the District of Delaware following lodging of the Consent Decree.  Any payment received by the Department of Justice after 3:00 p.m. Eastern Time shall be credited on the next business day.

8.     At the time it makes any payment required by this Consent Decree, Diamond State Salvage shall send notice that payment has been made to EPA and DOJ in accordance with Section XX (Notices and Submissions) and to:

> Docket Clerk (3RC00)
> United States Environmental Protection Agency
> Region III
> 1650 Arch Street
> Philadelphia, PA 10103-2029

Barbara Borden (3PM 30)
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 10103-2029

## VIII. <u>TRANSFER OF DIAMOND STATE SALVAGE SITE PROPERTY</u>

9.    Diamond State Salvage agrees that it will not sell, assign, transfer or exchange

the Property except in accordance with the requirements of Sections VIII and XIV of this

Consent Decree. Diamond State Salvage hereby certifies that it does not own any real property

other than Parcels 2603610401, 2603610414, and 2603610415. These parcels are referred to

hereinafter as the "Site Property."

10.    Beginning on the date of entry of this Consent Decree, Diamond State Salvage

shall immediately undertake efforts to Transfer the Site Property for use in accordance with all

applicable local, state, and federal laws and regulations. Diamond State Salvage shall use its best

efforts to Transfer the Site Property. "Best Efforts," for purposes of this Consent Decree, shall

include:

(a) soliciting suitable prospective purchasers for the Site Property;

(b) responding to the reasonable inquiries of prospective purchasers;

(c) maintaining the Site Property in a condition suitable for exhibition to prospective

purchasers;

(d) allowing the Site Property to be shown at all reasonable times;

(e) assisting the broker, dealer, agent, or consultant in any other reasonable way requested

in an effort to Transfer the Site Property at the highest price possible and as quickly as possible;

8

(f) transferring the Site Property based upon a reasonable current appraisal, which shall not be more than two years old at the time of Transfer. EPA may waive this requirement in its nonreviewable discretion;

(g) cooperating with the Delaware Department of Natural Resources and Environmental Control's Certification of Completion of Remedy ("COCR") process; and

(h) coordinating with representatives of the City of Wilmington Office of Economic Development for the purpose of marketing the Site Property; such coordination shall include allowing access to the Site at reasonable times for the purpose of marketing the Site Property.

11.    Diamond State Salvage may enter into an agreement with an agent or custodian to act on behalf of Diamond State Salvage to facilitate the marketing and Transfer of the Site Property.

12.    If Diamond State Salvage is unable to enter into an agreement for the Transfer of the Site Property without the services of a real estate broker, dealer, agent, or consultant within one hundred eighty (180) Days from the date of entry of this Consent Decree, Diamond State Salvage shall contract with a real estate broker, dealer, agent, or consultant who is licensed to do business in the State of Delaware and who shall follow the usual and normal practices for the Transfer of real property, including, for example, listing the property in one or more real estate listing services regularly used by real estate agents, brokers, and others and using other reasonable means, including but not limited to advertising, to ensure the availability of the subject property for sale is known to potential buyers. The 180-Day time period established in this Paragraph may be modified upon request by Diamond State Salvage and written agreement by EPA. EPA's decision whether to agree to any modification requested by Diamond State

9

Salvage is not subject to review. Neither Diamond State Salvage nor any Related Parties shall act as a real estate broker, dealer, agent, or consultant. For purposes of this Paragraph, "Related Parties" includes the shareholders of Diamond State Salvage, the spouses and former spouses of the shareholders, the siblings of the shareholders, any offspring of the shareholders and their siblings, and the children of any offspring of the shareholders and their siblings, and any businesses in which any of the foregoing own more than a 5% interest in the business.

13.     Diamond State Salvage shall ensure that the listing agreement with the real estate broker, dealer, agent, or consultant provides that said broker, dealer, agent or consultant shall timely provide to EPA copies of all advertising published with respect to the Site Property, indicating when such advertising is/was displayed. Copies shall be considered timely if the copies arrive at EPA within the month such advertising is/was displayed.

14.     Diamond State Salvage agrees to provide EPA and DOJ, at the addresses specified in Paragraph 52 of this Consent Decree, with a copy of any purchase offer for the Site Property, or any portion thereof, within forty-eight (48) hours of receipt of any such offer. If EPA does not object to the proposed Transfer within twenty (20) Days of EPA's receipt of the purchase offer, Diamond State Salvage may proceed with execution of a contract for Transfer on the terms identified in the purchase offer. In the event that any material term of the purchase offer is modified after being provided to EPA, Diamond State Salvage must submit the modification to EPA within five (5) Days of the date the modification is proposed. If EPA does not object to the proposed modification within twenty (20) Days of EPA's receipt of the proposed modification, owner Diamond State Salvage may proceed with the contract for Transfer on the modified terms. Diamond State Salvage shall receive no fee for its efforts to Transfer the

10

Site Property. Diamond State Salvage agrees to close the Transfer of the Site Property within the time period established in the contract for the Transfer of the Site Property, unless otherwise agreed to in writing by Diamond State Salvage and EPA.

15.    Diamond State Salvage shall have two (2) years from the date of lodging of this Consent Decree to use Best Efforts to Transfer the Site Property. EPA, in its non-reviewable discretion, may modify the two-year period upon request from Diamond State Salvage. Any such modification of the two-year period must be in writing and signed by the Parties. If, after the two-year period set forth in this Paragraph 15, Diamond State Salvage is unable to Transfer the Site Property, Diamond State Salvage agrees to auction the Site Property to the highest bidder. Diamond State Salvage agrees to engage a professional auctioneer and to publicize the auction fully, by means of daily advertisements in local newspapers for twenty-one (21) Days preceding the auction, as well as by all other appropriate and customary means for auctioning of real property in the Wilmington, Delaware, area. Any reasonable costs of an auction of the Property under this Paragraph 15 of this Consent Decree shall be considered closing costs pursuant to Paragraph 18 of this Consent Decree.

## IX. PAYMENT OF PROCEEDS FROM TRANSFER OF SITE PROPERTY

16.    At least twenty (20) Days before any Transfer of the Site Property by Diamond State Salvage, Diamond State Salvage shall notify EPA of the proposed Transfer with a written notice describing the property to be Transferred, the identity of the purchaser, the terms of the Transfer, including the estimated closing costs, the consideration to be paid, a copy of the Transfer agreement, and the name and address of the title company or other entity conducting the closing.

17.    In the event of a Transfer of the Site Property, Diamond State Salvage shall

continue to be bound by all of the terms and conditions, and subject to all of the benefits, of this

Consent Decree, unless this Consent Decree is modified in accordance with Section XX.

18.    Upon the Transfer of the Site Property, Diamond State Salvage shall pay to the

EPA Hazardous Substance Superfund ninety percent (90%) of the Net Sales Proceeds from the

Transfer of the Site Property, but not to exceed the amount of EPA's unreimbursed Response

Costs incurred in connection with the Site.    The Net Sales Proceeds from the Transfer of the Site

Property shall be calculated by subtracting from the purchase price the following costs:

(a) the real estate broker, dealer, agent, or consultant's fee or commission

(including advertising costs), if any, up to a maximum of six (6) percent of the purchase price ;

(b) required recording fees normally paid by seller in Delaware;

(c)  required transfer taxes normally paid by seller in Delaware;

(d) state and local property taxes due on the property at the time of Transfer;

(e) required payment of lien pre-dating EPA's Superfund lien; and

(f) reasonable attorney fees related solely to the closing on the Transfer of the Site

Property.

19.    Diamond State Salvage shall make all necessary arrangements with the title

company or other entity conducting the closing on any Transfer of the Site Property, or portion

thereof, to pay ninety percent (90%) of the Net Sales Proceeds under this Paragraph 19 as soon as

practicable after the closing, but no later than five (5) Days after the date of closing.  Payment

shall be made by EFT in accordance with the instructions provided in Paragraph 5 of this

Consent Decree.  Until the wire transfer of funds is completed in accordance with the

12

requirements of Paragraph 5 and this Paragraph 19 of this Consent Decree, ninety percent (90%) of the Net Sales Proceeds shall be held in an escrow account for the benefit of the EPA Hazardous Substance Superfund by the title company or other entity conducting the closing. In the event there is any dispute with regard to the closing costs and the Net Sales Proceeds, the disputed portions of the funds shall be held in escrow for the benefit of the Parties pending resolution of the dispute. Any undisputed closing costs shall be paid to the appropriate party at the time of closing. Undisputed portions of the Net Sales Proceeds shall be paid to the EPA Hazardous Substance Superfund in accordance with the EFT instructions in Paragraph 5 of this Consent Decree.

20.     At the same time that Diamond State Salvage pays the Net Sales Proceeds from the Transfer of the Site Property to the United States, Diamond State Salvage shall provide EPA and DOJ with an accounting identifying the purchase price, the Net Sales Proceeds, and each item subtracted from the purchase price to obtain the "Net Sales Proceeds" amount. Diamond State Salvage shall not subtract from the purchase price any costs not actually paid by the seller. Diamond State Salvage shall not subtract from the purchase price any costs paid to Related Parties. For purposes of this Paragraph, "Related Parties" includes the shareholders of Diamond State Salvage, the spouses and former spouses of the shareholders, the siblings of the shareholders, any offspring of the shareholders and their siblings, and the children of any offspring of the shareholders and their siblings, and any businesses in which any of the foregoing own more than a 5% interest in the business.

21.     Within thirty (30) Days of any auction as required by Paragraph 15 of this Consent Decree, Diamond State Salvage shall deliver to EPA the "Net Proceeds from the Auction" and

13

shall provide EPA with a copy of all documentation of conveyance. "Net Proceeds from the Auction" shall mean, for the purpose of this Paragraph, the gross proceeds from the auction of the Site Property, or any portion thereof, minus the costs of Transfer, including attorney's fees, auctioneer's fees, or commissions. Diamond State Salvage's payment of the Net Proceeds from the Auction pursuant to this Paragraph 21 shall be made in accordance with the requirements of Section VII of this Consent Decree.

## X.   **RECOVERY AND PAYMENT OF INSURANCE PROCEEDS**

22.    Beginning on the date of lodging of this Consent Decree, Diamond State Salvage shall use its Best Efforts to obtain recovery of insurance proceeds for reimbursement of the $18,095,861 in Response Costs incurred by the United States for response action at the Site. "Best Efforts" for purposes of this Paragraph 22 means Diamond State Salvage shall:

(a) attempt to locate and identify any and all Insurance Policies that may cover Response Costs incurred in connection with the Site; and

(b) seek recovery of insurance proceeds under the insurance policy or policies by making demands as appropriate on such policy or policies and further pursuing such demands as appropriate with respect to the potential for recovery under any such policy or policies.

23.    Beginning thirty (30) Days after entry of this Consent Decree, Diamond State Salvage  shall provide a quarterly written report to EPA describing the efforts that Diamond State Salvage has made to comply with the requirements of this Section X and the extent to which it has or has not been successful in seeking to recover insurance proceeds during the month covered by the report. The reports required by this Paragraph 23 of this Consent Decree shall be submitted to EPA on or before the 10th Day of the month following the quarter for

14

which the report is submitted. Such reports shall be required until: 1) such time as insurance proceeds are recovered and paid to the United States pursuant to the requirements of Paragraph 24 below, or (2) such time as the insurer(s) identified pursuant to Paragraph 22, above, deny coverage for response costs.

24.    In the event that Diamond State Salvage recovers any insurance proceeds for coverage of any portion of the $18,095,861 in Response Costs incurred in connection with the Site by the United States, Diamond State Salvage shall provide DOJ and EPA an accounting of the costs incurred in pursuing the insurance coverage and the gross amount of insurance proceeds recovered. Diamond State Salvage may retain the reasonable costs of pursuing the insurance coverage, provided that such reasonable costs of pursuit do not exceed 30% of the ultimate recovery. To the extent there are insurance proceeds in excess of such reasonable costs (not to exceed 30% of the ultimate recovery), Diamond State Salvage may retain 10% of the amount in excess of the reasonable costs of recovery. Diamond State Salvage shall pay the remaining 90% of the amount in excess of the reasonable costs of recovery to EPA in accordance with the provisions of Paragraph 5 of this Consent Decree. For purposes of this Section IX of this Consent Decree, "Insurance Proceeds" shall include any money recovered by or on behalf of Diamond State Salvage and shall include any money received with respect to any insurance policy, including but not limited to, whether the Policies are sold, bargained, settled, or cancelled.

25.    The payments required to be made under Paragraph 24 of this Consent Decree shall be in addition to the payments required by Section VIII (Transfer of Diamond State Salvage Site Property) of this Consent Decree.

15

## XI. **FAILURE TO COMPLY WITH CONSENT DECREE**

26.    <u>Interest on Late Payments</u>. If Diamond State Salvage fails to make any payment required by any provision of this Consent Decree by the required due date, Interest shall continue to accrue on the unpaid balance through the date of payment.

27.    <u>Stipulated Penalty</u>.

a. If any payments due under this Consent Decree are not paid by the required date, Diamond State Salvage shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, in addition to the Interest required by Paragraph 26, $2,000.00 per violation per Day that such payment is late.

b. Stipulated penalties are due and payable within thirty (30) Days of the date of the demand for payment of the penalties by EPA. All payments to EPA under this Paragraph shall be identified as "stipulated penalties" and shall be made by certified or cashier's check made payable to "EPA Hazardous Substance Superfund." The check, or a letter accompanying the check, shall reference the name and address of the party making payment, the Site name, the EPA Region and Site Spill ID Number 03-KD, and DOJ Case Number 90-11-2-1275, and shall be sent to:

> EPA Superfund
> United States Environmental Protection Agency, Region III
> Attention: Superfund Accounting
> P.O. Box 360515
> Pittsburgh, PA 15251-6515

c. At the time it makes its payment, Diamond State Salvage shall send notice that payment has been made to EPA and DOJ in accordance with Section XIX (Notices and Submissions) and to:

16

Docket Clerk (3RC00)
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 10193

Barbara Borden (3PM 30)
United States Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 10193

d. Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Diamond State Salvage of its violation or made a demand for payment, but need only be paid upon demand. All penalties shall begin to accrue on the day after payment is due and shall continue to accrue through the date of payment. Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

28.    If the United States brings an action to enforce this Consent Decree, Diamond State Salvage shall reimburse the United States for all costs of such action, including but not limited to costs of attorney time.

29.    Payments made under this Section XI shall be in addition to any other remedies or sanctions available to Plaintiff by virtue of Diamond State Salvage's failure to comply with the requirements of this Consent Decree.

30.    Notwithstanding any other provision of this Section XI, the United States may, in its nonreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree. Payment of stipulated penalties shall not excuse Diamond State Salvage from payment as required by Paragraphs 5, 18, 21 and 24 of this Consent Decree or from performance of any other requirements of this Consent Decree.

17

## XII. **RELEASE OF NOTICE OF FEDERAL LIEN**

31.    Within sixty (60) Days after EPA receives the payment required by Paragraphs 18

and 21 of this Consent Decree, and Subject to the Reservation of Rights in Section XIV, of this

Consent Decree, EPA agrees to remove any lien it may have on the Site Property under Sections

107(l) and 107(r) of CERCLA, 42 U.S.C. § 9607(l) and (r), as a result of response action

conducted by EPA at the Site.

## XIII. **COVENANT NOT TO SUE BY PLAINTIFF**

32.    Except as specifically provided in Section XIV (Reservation of Rights by United

States), the United States covenants not to sue Diamond State Salvage pursuant to Section 107(a)

of CERCLA, 42 U.S.C. § 9607(a), to recover Response Costs.  With respect to Diamond State

Salvage, this covenant not to sue shall take effect upon receipt by EPA of Diamond State

Salvage's payments required by Sections XIV and XI of this Consent Decree.  This covenant not

to sue is conditioned upon the satisfactory performance by Diamond State Salvage of all of its

obligations under this Consent Decree, including but not limited to, Section X of this Consent

Decree.  This covenant not to sue extends only to Diamond State Salvage and does not extend to

any other person.  With respect to Diamond State Salvage, this covenant not to sue is also

conditioned upon the veracity and completeness of the Financial Information provided to EPA by

Diamond State Salvage.  If the Financial Information provided by Diamond State Salvage is

subsequently determined to be false or, in any material respect, inaccurate, Diamond State

Salvage shall forfeit all payments made pursuant to this Consent Decree and this covenant not to

sue and the contribution protection in Paragraph 40 shall be null and void as to Diamond State

18

Salvage. Such forfeiture shall not constitute liquidated damages and shall not in any way

foreclose the United States' right to pursue any other causes of action arising from Diamond

State Salvage's false or materially inaccurate information.

### XIV. RESERVATION OF RIGHTS BY UNITED STATES

33.     The United States reserves, and this Consent Decree is without prejudice to, all

rights against Diamond State Salvage with respect to all matters not expressly included within

the Covenant Not to Sue by the United States in Paragraph 32. Notwithstanding any other

provision of this Consent Decree, the United States reserves all rights against Diamond State

Salvage with respect to:

> a. liability for failure to meet a requirement of this Consent Decree;

> b. criminal liability;

> c. liability for damages for injury to, destruction of, or loss of natural resources,

and for the costs of any natural resource damage assessments; and

> d. liability arising from the past, present, or future disposal, release or threat of

release of a hazardous substance, pollutant, or contaminant outside of the Site.

34.     Ability to Pay/Failure to Supply Financial Information. The Parties recognize that

the payments required by this Consent Decree reflect a compromise resulting from an assessment

of Diamond State Salvage's financial condition based upon information it has provided to the

EPA and DOJ through December 2004, and identified in the Declaration attached hereto as

Appendix A. Diamond State Salvage hereby certifies that it has submitted to EPA exact copies

of Federal income tax returns that were filed with the Internal Revenue Service and those tax

returns fairly, accurately, and materially set forth Diamond State's financial circumstances, and

that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Diamond State Salvage executes this Consent Decree.

35.    Nothing in this Consent Decree is intended to be nor shall it be construed as a release, covenant not to sue, or compromise of any claim or cause of action, administrative or judicial, civil or criminal, past or future, in law or in equity, which the United States may have against any person, firm, corporation or other entity not a signatory to this Consent Decree.

## XV. COVENANT NOT TO SUE BY DIAMOND STATE SALVAGE

36.    Waiver of Claims.  Diamond State Salvage covenants not to sue and agrees not to assert any claims or causes of action against the United States, or its contractors or employees, with respect to the Site or this Consent Decree, including but not limited to:

a.  any direct or indirect claim for reimbursement from the Hazardous Substance Superfund based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b.  any claim arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or


c.  any claim against the United States pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Site.

37.    Except as provided in Paragraph 36 (Waiver of Claims) and Paragraph 42 (Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event the United States brings a cause of action or issues an order pursuant to the reservations set forth in

Paragraph 33(c) - (d), but only to the extent that Diamond State Salvage's claims arise from the same response action or response costs that the United States is seeking pursuant to the applicable reservation.

38.    Nothing in this Consent Decree shall be deemed to constitute approval or preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. 300.700(d).

### XVI.  EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

39.    Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree. The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Decree may have under applicable law. The Parties expressly reserve any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which they may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

40.    The Parties agree, and by entering this Consent Decree this Court finds, that Diamond State Salvage is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Response Costs. The "matters addressed" in this Consent Decree do not include those response costs or response actions as to which the United States has reserved its rights under this Consent Decree (except for claims for failure to comply with this Decree), in the

21

event that the United States asserts rights against Diamond State Salvage coming within the scope of such reservations.

41.    Diamond State Salvage agrees that, with respect to any suit or claim for contribution brought by it for matters related to this Consent Decree, it will notify EPA and DOJ in writing no later than sixty (60) Days prior to the initiation of such suit or claim. Diamond State Salvage also agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify EPA and DOJ in writing within ten (10) Days of service of the Complaint or claim upon it. In addition, Diamond State Salvage shall notify EPA and DOJ within ten (10) Days of service or receipt of any Motion for Summary Judgment, and within ten (10) Days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

42.    Waiver of Claim-Splitting Defenses. In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of Response Costs, or other relief relating to the Site, Diamond State Salvage shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiff set forth in Section XIII.

## XVII. ACCESS AND INSTITUTIONAL CONTROLS

43.    Diamond State Salvage shall:

a. commencing on the date of lodging of this Consent Decree and continuing until the completion of the Transfer of the Site Property, provide the United States and its representatives, including EPA and its contractors, with access at all reasonable times to the Site, or such other property, for the purpose of conducting any response activity related to the Site, including, but not limited to, the following activities:

1. Monitoring, investigation, removal, remedial or other activities at the Site;

2. Verifying any data or information submitted to the United States;

3. Conducting investigations relating to contamination at or near the Site;

4. Obtaining samples;

5. Assessing the need for, planning, or implementing additional response actions at or near the Site;

6. Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Diamond State Salvage or its agents, consistent with Section XVIII (Access to Information);

7. Assessing Diamond State Salvage's compliance with this Consent Decree; and

8. Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b. commencing on the date of lodging of this Consent Decree and continuing until the completion of the Transfer of the Site Property, refrain from using the Site, or such other

23

property, in any manner that would interfere with or adversely affect the implementation, integrity or protectiveness of the response actions at the Site.

44.    If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement response activities at the Site, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Diamond State Salvage shall cooperate with EPA's efforts to secure such governmental controls.

45.    Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statute or regulations.

## XVIII.  ACCESS TO INFORMATION

46.    Diamond State Salvage hereby certifies that it has provided to EPA all records, reports, or information (hereinafter referred to as "records") within its possession or control or that of its contractors or agents relating to activities at the Site including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Site.

47.    Confidential Business Information and Privileged Documents.

a.  Diamond State Salvage may assert business confidentiality claims covering part or all of the records submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R.

2.203(b). Records determined to be confidential by EPA will be accorded the protection

specified in 40 C.F.R. Part 2, Subpart B. If no claim of confidentiality accompanies records

when they are submitted to EPA, or if EPA has notified Diamond State Salvage that the records

are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2,

Subpart B, the public may be given access to such records without further notice to Diamond

State Salvage.

        b. Diamond State Salvage may assert that certain records are privileged under the

attorney-client privilege or any other privilege recognized by federal law. If Diamond State

Salvage asserts such a privilege in lieu of providing records, Diamond State Salvage shall

provide the EPA and the DOJ with the following: 1) the title of the record; 2) the date of the

record; 3) the name and title of the author of the record; 4) the name and title of each addressee

and recipient; 5) a description of the subject of the record; and 6) the privilege asserted.

However, no records created or generated pursuant to the requirements of this or any other

settlement with the United States shall be withheld on the grounds that they are privileged.

    48.    No claim of confidentiality shall be made with respect to any data, including but

not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or

engineering data, or any other records evidencing conditions at or around the Site.

## XIX. RETENTION OF RECORDS

    49.    Until three (3) years after the entry of this Consent Decree, Diamond State

Salvage shall preserve and retain all records now in its possession or control, or which come into

its possession or control, that relate in any manner to response actions taken at the Site or the

25

liability of any person under CERCLA with respect to the Site, regardless of any corporate

retention policy to the contrary.

50.    After the conclusion of the document retention period in the preceding paragraph,

Diamond State Salvage shall notify EPA at least ninety (90) Days prior to the destruction of any

such records, and, upon request by EPA, Diamond State Salvage shall deliver any such records to

EPA.  Diamond State Salvage may assert that certain records are privileged under the attorney-

client privilege or any other privilege recognized by federal law.  If Diamond State Salvage

asserts such a privilege, it shall provide the EPA and DOJ with the following:  1) the title of the

record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and

title of each addressee and recipient; 5) a description of the subject of the record; and 6) the

privilege asserted.  However, no records created or generated pursuant to the requirements of this

or any other settlement with the United States shall be withheld on the grounds that they are

privileged.

51.    Diamond State Salvage hereby certifies that, to the best of its knowledge and

belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise

disposed of any records, reports, or other information relating to its potential liability regarding

the Site since notification of potential liability by the United States or the filing of suit against it

regarding the Site, and that it has fully complied with any and all EPA requests for information

regarding the Site pursuant to Sections 104(e) and 122(e) of CERCLA, 42 U.S.C. §§ 9604(e) and

9622(e), and Section 3007 of RCRA, 42 U.S.C. § 6927.

26

## XX.  NOTICES AND SUBMISSIONS

52.    Whenever, under the terms of this Consent Decree, notice is required to be given

or a document is required to be sent by one party to another, it shall be directed to the individuals

at the addresses specified below, unless those individuals or their successors give notice of a

change to the other Parties in writing.  Written notice as specified herein shall constitute

complete satisfaction of any written notice requirement of the Consent Decree with respect to the

Department of Justice, EPA, and Diamond State Salvage, respectively.

As to the Department of Justice:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-2-1275)
P.O. Box 7611
Ben Franklin Station
Washington, D.C.  20044-7611


As to the U.S. Environmental Protection Agency:

Patricia C. Miller (3RC41)
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

Chief, Removal Enforcement and Oil Section
Hazardous Site Cleanup Division
U.S. Environmental Protection Agency
Region III
1650 Arch Street
Philadelphia, PA 19103

<u>As to Diamond State Salvage</u>:

Barbara Sherr Kleger
226 W. Rittenhouse Square, #3009
Philadelphia, PA 19103

     and

Estate of Herbert Sherr
Glenn A. Harris, Esq.
Ballard, Spahr, Andrews & Ingersoll, LLP
Plaza 1000, Suite 500
Main Street
Voorhees, New Jersey 08043-4636

## XXI.    **MODIFICATION OF CONSENT DECREE**

53.    <u>Modification</u>. Any modification of this Consent Decree must be in writing and approved by the Court. Any agreed upon written modification must be signed by the Parties to this Consent Decree. No Party may petition the Court for modification without having first made a good faith effort to reach agreement with the other Parties on the terms of such modification.

## XXII.    **RETENTION OF JURISDICTION**

54.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XXIII.    **INTEGRATION/APPENDICES**

55.    This Consent Decree and its appendices constitute the final, complete and exclusive Consent Decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in

this Consent Decree. The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" consists of a declaration executed by Diamond State Salvage concerning its financial condition and attesting to the completeness and accuracy of the Financial Information that it has provided to the EPA and DOJ.

"Appendix B" consists of a shareholders' resolution authorizing Barbara Sherr Kleger to act on behalf of Diamond State Salvage with respect to certain requirements of this Consent Decree and authorizing Barbara Sherr Kleger to sign this Consent Decree on behalf of Diamond State Salvage.

## XXIV. **LODGING AND OPPORTUNITY FOR PUBLIC COMMENT**

56.    This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public comment. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate. Diamond State Salvage consents to the entry of this Consent Decree without further notice.

## XXV. **SIGNATORIES/SERVICE**

57.    The undersigned representative of Diamond State Salvage to this Consent Decree certifies that she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally Diamond State Salvage to this document.

58.    Diamond State Salvage hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree.

29

59.     Diamond State Salvage shall identify, on the attached signature page, the

name and address of an agent who is authorized to accept service of process by mail on its behalf

with respect to all matters arising under or relating to this Consent Decree.  Diamond State

Salvage hereby agrees to accept service in that manner and to waive the formal service

requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local

rules of this Court, including but not limited to, service of a summons.  The Parties agree that

Diamond State Salvage need not file an answer to the Complaint in this action unless or until the

Court expressly declines to enter this Consent Decree.

## XXVI. **FINAL JUDGMENT**

60.     Upon approval and entry of this Consent Decree by the Court, this Consent

Decree shall constitute the final judgment between the United States and Diamond State Salvage.

The Court finds that there is no just reason for delay and therefore enters this judgment as a final

judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS ___ DAY OF _____, 2006.


_____
United States District Judge

30

FOR THE UNITED STATES OF AMERICA


Date:_____

SUE ELLEN WOOLDRIDGE
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice


Date: 6/22/06

DONNA DUER
Environmental Enforcement
   Section
United States Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044
(202) 514-3475


COLM F. CONNOLLY
United States Attorney
District of Delaware


Date: 6/27/06

PATRICIA A. HANNIGAN
Assistant United States Attorney
Chemical Bank Plaza
1201 Market Street, Suite 100
Wilmington, Delaware 19899


31

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v. Diamond State Salvage Company, Inc., et al.</u> (Civil Action No. 05-76) concerning the Diamond State Salvage Superfund Site.


ON BEHALF OF THE ENVIRONMENTAL PROTECTION AGENCY:


Date: 6|15|06

DONALD S. WELSH
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029


Date: 6|6|06

WILLIAM C. EARLY
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029


Date: 6|14|06

PATRICIA C. MILLER
Senior Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029


32

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of <u>United States v.</u> <u>Diamond State Salvage Company, Inc., et al.al.</u> (Civil Action No. 05-76) concerning the Diamond State Salvage Superfund Site.

FOR DEFENDANT DIAMOND STATE SALVAGE:

Date: 4/6/06

BARBARA SHERR KLEGER
226 W. Rittenhouse Square, #3009 # 3010
Philadelphia, PA 19103

Agent Authorized to Accept Service on Behalf of Above-signed Party:

BARBARA SHERR KLEGER
226 W. Rittenhouse Square, #3009
Philadelphia, PA 19103

33

# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) Civil Action No.05-76 |
| v. | ) |
| | ) Judge |
| DIAMOND STATE SALVAGE COMPANY, INC., | ) |
| ESTATE OF HERBERT SHERR, | ) DECLARATION |
| NANCY SHERR, AS EXECUTRIX FOR THE | ) |
|   ESTATE OF HERBERT SHERR, | ) |
| BARBARA SHERR KLEGER, | ) |
| | ) |
| and | ) |
| | ) |
| DELMARVA POWER & LIGHT COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **DECLARATION**

I, Nancy Sherr, as Executrix for the Estate of Herbert Sherr, hereby certify that on

November 2, 2005, Glenn Harris, attorney for the Estate of Herbert Sherr, on my behalf,

submitted to the United States Department of Justice with true and correct copies of the federal

Income Tax Returns for Diamond States Salvage Company, Inc. filed with the Internal Revenue

Service for the tax years 2000 through and including 2004.   To the best of my knowledge and

belief, after reasonable inquiry, these documents contain accurate and complete information

concerning the financial condition of Diamond State Salvage Company, Inc. for the years 2000

through and including 2004.

I further certify that to the best of my knowledge and belief, after reasonable inquiry, the financial condition of the Diamond State Salvage Company, Inc. has not changed materially since November 2, 2005.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on ___21 April 2006___.

Nancy Sherr, Executrix

Nancy Sherr

Executrix for the Estate of Herbert Sherr

**APPENDIX A**

2

# APPENDIX B

DIAMOND STATE SALVAGE COMPANY, INC.

ACTION BY UNANIMOUS CONSENT OF SHAREHOLDERS

The Shareholders of Diamond State Salvage Company, Inc. hereby adopt the following resolution by unanimous consent:

RESOLVED, that Barbara Kleger is hereby authorized to sign the attached Consent Decree on behalf of this corporation.

RESOLVED, that Barbara Kleger is hereby authorized to act on behalf of this corporation with respect to this corporation's obligations under Paragraphs 10 through 21 of the attached Consent Decree. Ms. Kleger shall obtain approval from the Estate of Herbert Sherr with respect to Paragraphs 10(f) (obtaining an appraisal), 12 (listing property), 14 (review, execution, and transmittal to EPA of purchase offer), 15 (engage auctioneer and auction property), and 19-21 (distribution of and accounting for proceeds).

Dated: _4/6/06_

ESTATE OF HERBERT SHERR

_Barbara Kleger_

Barbara Kleger

_Nancy Sherr, ExecuTrix_

By: Nancy Sherr, Executrix

## AFFIDAVIT OF SERVICE

I, Kathie Gray, an employee in the Office of the United States Attorney for the District of Delaware, hereby attest under penalty of perjury that on June 29, 2006, I electronically filed the foregoing **PLAINTIFF UNITED STATES OF AMERICA'S NOTICE OF LODGING OF CONSENT DECREE and CONSENT DECREE** with the Clerk of Court using ECF, and I hereby attest that I have delivered two copies of said documents via United States Mail, postage prepaid, to the following:

Glen Harris, Esq.  
Ballard Spahr Andrews & Ingersoll, LLP  
Plaza 1000, Suite 500  
Main Street  
Voorhees, NJ 08043-4636

Barbara Sherr Kleger  
226 West Rittenhouse Square  
#3010  
Philadelphia, PA 19103

PHI Service Company  
c/o Legal Services Department  
800 King Street  
P.O. Box 231  
Wilmington, DE 19899-0231

/s/ Kathie Gray

---

Kathie Gray  
Office of the United States Attorney  
The Nemours Building  
1007 Orange Street  
P.O. Box 2046  
Wilmington, DE 19899